**LEASIOLAGI of Fagatogo, Plaintiff**

**v.**

**FAO of Iliili, Defendant**

No. 12-1949

High Court of American Samoa

Civil Jurisdiction, Trial Division

[Land: "Lesoliga" near Futiga]

May 4, 1949

■■■■■■
■■■■■■
■■■■■■

A. A. MORROW, *Chief Justice;* MALEPEAI, *District Judge;* and NUA, *District Judge.*

DECISION

Heard at Fagatogo April 27, 1949.
Tupua for Leasiolagi; Suafoa for Fao.

■■■■■■

MORROW, *Chief Justice.*

Fao, a matai of Iliili, filed his application to have the land Lesoliga situated near Futiga village registered as his individually owned property. A survey of the tract accompanied the application. Leasiolagi of Fagatogo, a member of the Fao family, filed an objection in behalf of the family to such proposed registration claiming that the land was the communal property of the Fao family. Hence this litigation. Sec. 905 of the American Samoan Code. Prior to the hearing the court viewed the land in the presence of the parties.

■■ Fao received his title shortly before the establishment of the government in 1900. The Register of Adoptions shows that in 1909 he adopted Malu and Mena (now Fia), the wife of Faamao. In 1910 a number of other persons were living with Fao under his matai jurisdiction. Among them were Ali, Pepe, Lafitaga and Pua. Lafitaga and Pua were members of the Fao family. Ali and Pepe were considered by Fao to be his adopted children. It is our conclusion from the evidence that Malu, Ali, Pepe, Lafitaga, Pua and Fia were under Samoan custom all members of the Fao family. In 1910 Fao and his adopted children

(we include those living with him even though not recorded as adopted in the Register of Adoptions, since he considered them as adopted in accordance with the Samoan customs of the time) began to clear the land involved, it being at that time bush. The large trees growing on it were cut and plantations put in by Fao and his adopted children and the two who were born family members. This land has been occupied by Fao and his children (he has no blood children) ever since it was cleared. The clearing began in 1910 and extended over a period of years. As late as 1922 Faamao who married Mena (now Fia) cleared some of the land. He and Fia live with Fao.

██ Title to bush land is gotten by occupation thereof under a claim of ownership. In the case of *Soliai v. Lagafua*, No. 5-1949 (Am. Samoa) we said "Occupation coupled with a claim of ownership will establish ownership to what was bush land before occupation. See 2 Blackstone 8. The view that the occupant who first takes possession of land with the intention of having it as his own thereby becomes the owner of it is approved in Maine's Ancient Law (3rd Am. Ed.) at p. 238. This doctrine of acquisition of original title by the first occupant, accompanied by a claim of ownership, was approved by this court in the case of *Faataliga v. Fano*, No. 80-1948 (Am. Samoa)." In the case of *Soliai v. Levu*, No. 6-1949 (Am. Samoa) we said "This court judicially knows that when the members of a Samoan family took possession of bush land and used it in the early days, ownership was claimed not by such members in their own right but in behalf of their matai as owner of the communal family property." And it was the custom for the matai and members of his family clearing bush land and occupying it to claim it as communal family land and not as the individually owned land of either the matai or the family members occupying it.

■ The question in this case is whether the land when it was cleared and occupied under a claim of ownership by Fao and his adopted children, who under Samoan custom were members of the Fao family, became communal family property or the individually owned property of the matai. We think it became communal family property in accordance with Samoan customs and we so hold. Sec. 2 of the American Samoan Code provides that "The customs of the Samoans not in conflict with the laws of American Samoa or the laws of the United States concerning American Samoa shall be preserved." There is no law of American Samoa or of the United States concerning American Samoa providing that when a matai and members of his family clear bush land and occupy it under a claim of ownership that it shall become the individually owned property of the matai. Fao filed a claim for war damage to this land and received compensation therefor from the United States. He filed the claim as a matai and swore that he held title to this property, as a matai and head of the family for himself and members of his family. We think he told the truth when making his sworn claim and that he and the members of the family who cleared the land and occupied it intended at the time that it should be communal family property and not Fao's individually owned land.

We are convinced from the evidence that Fao, who is 82 years of age, now claims the land as his own because he fears that when he dies the other members of the Fao family will chase those members now living on it away from the land and deprive them of its use. In answer to the question "If you knew that these so-called adopted children of yours could live on the land after you died you would not have any objection to it being registered as Fao family land would you?" Fao replied "No." Fao further testified that he had the land surveyed and he offered it for registra-

tion as his own in order to keep his family from chasing out his adopted children after he died.

■ Holding as we do that the children of Fao now occupying the land along with him are Fao family members under Samoan custom (they render service to him) the other members of the Fao family including the new matai cannot deprive them of the use of family lands after Fao's death. Clan lands belong to the clan and are held by the matai for the use of the clan members. A member of a Samoan clan has a right to live on clan land and he cannot be deprived of that right by other members of the clan. When the objector Leasiolagi was on the witness stand he testified as follows:

"Q. Fao states that the real trouble is that he fears when he dies the people who are living on there will be kicked out by the family, what have you to say about that?

A. During the meeting of the family when all the chiefs of the family were together the family chiefs told Fao he did not have to worry anything about his adopted children they are adopted with according to law and are considered family members.

Q. Are you telling the court that the members of the family would not chase out Malu or any others who are living out there now?

A. No.

Q. If they have been living there on the land for a long time and have been rendering service to Fao would they not be allowed to live on the land if Fao died?

A. That is the real Samoan custom but the reason why we object to this offer is because he offered it as his own individual land.

Q. If he offered it as communal family land and he died would you consider that you could put any of these people off?

A. No the family expressed their answer to Fao already that they would not chase these people out if he died."

■■ We think that Leasiolagi was right when he said that those people could not be "put off." The right to the occupation and use of clan lands by family members is secured by the law of American Samoa since such right is

455

recognized by those Samoan customs which are preserved by Sec. 2 of the Code. In this connection it is not inappropriate to refer to Sections 826 and 827 of the Code. The former reads:

"If two or more persons conspire to injure, oppress, threaten, or intimidate any person in the free exercise or enjoyment of any right or privilege secured to him by any law of the United States applicable in American Samoa, or by any law of American Samoa, or because of his having so exercised the same, they shall, upon conviction, be fined not more than $1,500.00, or imprisoned not more than three years, or both."

The latter provides:

"If any Samoan chief by reason of his rank, or title, shall injure, oppress, threaten, subject to indignities, or intimidate any person in the free exercise or enjoyment of any right or privilege secured to him by any law of the United States applicable in American Samoa, or by any law of American Samoa, or because of his having so exercised the same, he shall, upon conviction, be fined not more than $500.00, or imprisoned not more than three years, or both."

If after Fao's death the new matai and family members attempt to deprive the adopted children of Fao of the use of clan lands, they have the right to apply to the courts for relief against such attempted violation of their rights. They can also bring the matter before the Attorney General in his capacity as Secretary of Native Affairs. In view of the above quoted testimony of Leasiolagi representing the family and the law protecting the right of family members in family lands we think that the fear of Fao that after his death the new matai and other members of the family will deprive his adopted children who are living with him of their right to use and occupy Fao family land is groundless.

It is ORDERED, ADJUDGED and DECREED that the land Lesoliga be registered as the communal family land of the Fao family, and the Registrar of Titles will be so advised.

456

Since Fao paid for the survey it is equitable and just that the family represented by Leasiolagi pay the costs. The survey will inure to the benefit of the family. Accordingly costs in the sum of $12.50 are hereby assessed against Leasiolagi, representing the family, the same to be paid within 15 days.